Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 8013 | **DATE** | 1/5/2001 |
| **CASE TITLE** | Stephen A. Gummow vs. Snap-On Tools, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is denied. (52-1)

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 11 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | KD docketing deputy initials | 60 |
| | Mail AO 450 form. | FOR DOCKETING JAN 10 PM 5:00 | | |
| | Copy to judge/magistrate judge. | | | |
| TP | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STEPHEN A. GUMMOW,

Plaintiff,

v.

SNAP-ON TOOLS, INC.,

Defendant.

No. 98 C 8013
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Stephen Gummow is a career craftsman with a passion for designing and developing hand tools. About twenty years ago, Gummow conceived of the idea for a dual action ratchet wrench. Gummow's tool is unique among wrenches in that the user can move the handle into a different plane above the wrench body and rotate the wrench body around while the head is fixed. This special configuration allows the user to rapidly and easily fasten or loosen a nut and is especially useful where space is limited. Gummow patented his wrench in 1983 and now owns United States Patent No. 4406186 entitled "Dual Action Ratchet Wrench." (hereinafter the "'186 patent").

The dual action feature of Gummow's wrench has earned him a good deal of recognition among inventors and hand tool consumers. At the 1981 national Inventor's Congress, Gummow's wrench won first place. Recently, Stanley Tool Company agreed to license the dual action ratchet wrench. In addition, this year Gummow's wrench was awarded *Popular Mechanic's* prestigious "Hand Tool of the Year Award."

1



Defendant Snap-On Tools Company is a Delaware corporation with its principal place of business in Kenosha, Wiscosin. Snap-On sells a multi-action ratchet wrench that was patented by inventor James Cole in 1994. Like the Gummow wrench, Snap-On's wrench consists of (1) a wrench body; (2) a pin connected to the wrench body; and (3) a separate handle with an opening to allow the handle to slide along the pin in two vertical positions relative to the wrench body.[1] Snap-On's wrench was patented over Gummow's wrench because Mr. Cole added splines on the pin which allow the handle to be in one of thirteen angular positions, compared to Gummow's three angular positions.

In 1998, Gummow sued Snap-On, alleging that Snap-On's multi-action wrench literally infringes on claim 11 of the '186 patent. Snap-On counterclaimed for a declaratory judgment of non-infringement. Before me is Snap-On's motion for summary judgment.

## '186 PATENT CLAIM LANGUAGE

I begin with the language of claim 11. In construing claim 11, I follow the general rule that terms in the claim are to be given their full and ordinary meaning to one of ordinary skill in the art. See *Johnson Worldwide Assoc., Inc., v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). Claim 11 states:

> 11. A wrench comprising:
> a wrench body having a top and a bottom;
> a shank extending downwardly from the bottom of

---

[1] Both wrenches can be adjusted for a high torque or low torque application. In the first locked position for high torque application, the handle and wrench body are in the same horizontal plane and are in a contacting relationship. In this first position it is used as a conventional ratchet wrench for initial loosening or final tightening of the nut. To achieve the second position, the user pushes downward on the pin which results in the handle being slid up the pin to a position above and parallel to the wrench body. As the user moves the handle in one small continuous movement in one direction, a low torque is transmitted to the wrench body allowing the nut to be rapidly spun on or off.

the wrench body for rotatably driving removably
attached tools about a first axis;
a pivot pin having a lower end and an upper end, the
pivot pin being attached at its lower end to the
wrench body and extending upwardly to its upper
end which is located above the top of the wrench
body, the pivot pin defining a second axis which is
spaced from and parallel to the first axis; and
a handle having a first end for gripping by a user and
a second end for connection to the wrench body,
the handle having a cylindrical opening at its second end through which the pivot pin extends and
being slidable on the pivot pin along the second
axis between a first position adjacent the lower end
of the pivot pin, in which the wrench body and the
second end of the handle are positioned so that at
least a portion of the second end of the handle is
below a plane which is perpendicular to the first
and second axes and is defined by the top of the
wrench body, with a surface of the second end
engaging a mating surface of the wrench body so
that the handle and the wrench body are in a fixed
engaged force transmitting relationship, and a second position adjacent the upper end of the pivot
pin in which the handle is elevated with respect to
the top of the wrench body so that a bottom surface on the second end of the handle is elevated
with respect to the top of the wrench body and the
second end of the handle is freely rotatable about
the pivot pin while the pivot pin and the second
end of the handle are freely rotatable in a full circle
about the first axis.

Snap-On claims that its wrench does not have two critical elements of claim 11, either literally or equivalently. First, Snap-On says that its wrench does not infringe because the Snap-On wrench does not have a "surface of the second end of the handle engaging in a mating surface of the wrench body so that the handle and the wrench body are in a fixed engaged force

3

transmitting relationship." Second, Snap-on says that its wrench does not have a "cylindrical opening" in the handle end.

A.     *"Fixed Engaged Force Transmitting Relationship"*

With respect to the wrench handle, the following element of claim 11, which refers to the wrench being in the first locked position for high torque application, is at issue:

> "with a surface of the second end [of the handle] engaging a mating surface of the wrench body so that the handle and the wrench body are in a fixed engaged force transmitting relationship."

Breaking this phrase down into its component parts, there are two elements that require construction. First, I must determine whether the patent specifies which part of the handle and which part of the wrench body must be fixed and engaged. Next, I must determine what kind of force transmission structure is required by the claim language.

1.     My first question is whether the Gummow patent is limited to an arrangement in which both the vertical and the horizontal surfaces of the handle and the wrench body are in contact, as they are on Gummow's wrench. A comparison of the two wrenches at issue demonstrates why construction of this element of the claim is important to Gummow's infringement claim. On Gummow's wrench, the horizontal and the vertical surfaces of the second end of the handle are in contact with the wrench body. On Snap-On's wrench, the vertical surface of the handle does not touch the vertical surface of the wrench body. If the '186 patent requires that vertical surfaces are touching, Snap-On's wrench does not infringe.

Snap-On argues that I should adopt a narrow interpretation of the claim language based upon the two embodiments in the '186 patent specification. In support of its argument, Snap-On

4

quotes the following language from the specification, which describes a wrench in which the vertical surfaces are mating:

> To render the handle angularly immovable with respect to the wrench body in the shank, the inner end of the connecting end portion 28 of the handle is defined by a surface 34 which extends in perpendicular relationship to the upper surface of neck 22 and in parallel relationship to the axis of pivot pin 24. As seen in FIGS. 1, 3, and 4, <u>this handle end surface 34 is positioned in parallel contacting relationship to the shoulder face 33 of the shoulder of the case 20 of the wrench body 12</u> when the handle is situated in its first position. ('186 patent, col. 4, lines 7-24).

As this language discloses, one example of claim 11 would cover a wrench where force is transmitted directly through the vertical surfaces of the handle and wrench body. However, "a patent claim is not necessarily limited to a preferred embodiment disclosed in the patent." *Transmatic, Inc. v. Gulton Industries, Inc.*, 53 F.3d 1270, 1277 (Fed. Cir. 1995). Claim 11 is broader than the embodiments disclosed in the '186 patent specification. The claim language does not include the modifier "vertical" before the word "surface", and I am not to add modifiers to broad terms standing alone. *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 865 (Fed. Cir. 1997). I find that claim 11 is not limited to a situation in which both the vertical and horizontal surfaces are in contact.

    2.    The more difficult question is how to construe the '186 claim language regarding the force transmitting structure of the patented wrench. Snap-On would have me construe the patent language narrowly, in a way which would remove the force transmission structure of its wrench from the scope of the '186 patent. Snap-On's basic argument is that the claim requires the force transmission to be from a handle *surface* to a wrench body *surface*. Gummow would have me construe the language more broadly.

5

For purposes of illustration, I will consider Snap-On's description of the force transmission structure on its tool. Snap-On says that when the user applies torque to the Snap-On wrench handle, force is transmitted through the pin *indirectly* by engagement of the splines on the inside of the handle with the splines on the outside of the pin. This, in Snap-On's view, is in contrast to the '186 patent language which (according to Snap-On) requires that force be transmitted *directly* through the surface of the handle to the surface of the wrench body. Snap-On contends that the patent does not cover an arrangement in which (although the surfaces may be mating) torque force is transmitted through splines on the pin as opposed to through the wrench handle and body surfaces.

Again, I think that Snap-On interprets the claim language too narrowly. If the patentee had intended to limit the claim language to a situation in which force was transmitted *directly* from the handle to the body, it would have used a phrase like "so that the handle transmits force to the body." Instead, the claim language requires that the handle and body be in a "fixed engaged force transmitting *relationship*." This would seem to me to include an indirect as well as a direct relationship. I decline to read into the patent limitations which are not present in the claim language. As long as the handle and body surfaces are fixed and engaged *while* force is transmitted, the handle surface need not actually cause the force transmission.

B.    *"Cylindrical Opening"*

Claim 11 requires the handle to have a cylindrical opening on its second end to allow the handle to slide on the pin between two positions. Claim 11 states:

> "the handle having a cylindrical opening at its second end through which the pivot pin extends and being slidable on the pivot pin along the second axis between a first position . . . and a second position . . . ."

6

Snap-On argues that the opening on its wrench is not cylindrical because it has splines on the interior surface, as compared to the Gummow wrench, on which the pin is smooth. The question before me is: what is a cylindrical opening?

The parties refer me to different sources to establish the meaning of the phrase "cylindrical opening." Gummow refers me to definitions of "curve," "cylinder" and "cylindrical surface" from the educational textbook, "*Geometry, A Modern Introduction.*" According to this source, a curve is any shape made by connecting two or more points. (It can be a straight line, circle, hexagon, or any other shape whether or not it has sharp angles). A "cylindrical surface" is the union of all parallel lines on any curve. Because a curve can be any shape, it follows that the cylindrical surface can be any shape. According to Gummow, therefore, the definition of a "cylindrical opening" is *any* shaped opening of a cylindrical surface formed by any curve, whether it be formed by sharp bends, a continuous arc, a continuous wave, or any other shape. The *McGraw-Hill Encyclopedia of Science and Technology* (Vol. 4 at 653) also supports Gummow's interpretation of the term "cylindrical."

Snap-On's definition of a "curve" and a "cylinder" comes from *Webster's International* general dictionary. That source defines a "cylinder" as "the surface traced by any straight line moving parallel to a fixed straight line and intersecting a curve." It defines a curve as "a bending without angles."

Snap-On's proposed definition contradicts the technical meaning of "cylinder" set forth in an educational textbook. Generally, technical definitions are preferable to definitions found in general dictionaries. See *The Toro Company v. White Consolidated Indus., Inc.*, 199 F.3d 1295,

1300 (Fed. Cir. 1999)("Dictionaries provide general definitions, rarely in sufficient detail to resolve questions in particular contexts."). Moreover, there is nothing in the claim language to suggest that the patentee intended to limit the shape of the handle opening to a perfectly circular shape. Snap-On incorrectly limits the meaning of the word "cylindrical" in a manner in which the claim language does not support. I accept Gummow's definition of the phrase cylindrical opening.[2]

Given my construction of Gummow's patent, a reasonable finder of fact could find that Snap-On's dual action ratchet wrench infringes claim 11 of U.S. Patent No. 4,406,186. Defendant's motion for summary judgment is denied.

ENTER:

James B. Zagel
United States District Judge

DATE: 5 Jan 2001

---

[2] I note that even if I accepted Snap-On's definition of the phrase "cylindrical opening," I would not grant summary judgment in its favor. This is because the opening on the Snap-On wrench handle could reasonably be construed as a succession of curved lines – not angular teeth.

8